STATE *v.* SLOAN.

Opinion delivered October 7, 1899.

1. CONSTITUTIONAL LAW—LEGISLATIVE DISCRETION.—Under the constitutional provision that "no state tax shall be allowed, or appropriation of money made, except to raise means * * * for defraying the necessary expenses of government, * * * except by a majority of two-thirds of both houses of the general assembly" (Const. 1874, art. 5, § 31), *held* that the power to appropriate money by a vote of a simple majority of both houses in order to defray the necessary expenses of government carries with it the right to determine what is a necessary expense. (Page 579.)

2. SAME—NECESSARY EXPENSES OF GOVERNMENT.—Where a bill making appropriation for building a new capitol received a majority merely of the votes of both houses of the general assembly, and the presiding officers of both houses decided that the bill received the majority necessary for its passage, from which decision no appeal was taken, it will be inferred that the legislature ratified the acts of its officers, and thereby declared that the bill was constitutionally passed, and therefore that the building of a new capitol was a necessary expense of government. (Page 579.)

3. APPROPRIATION BILLS—UNITY OF SUBJECT.—Under the provision of the constitution that all appropriations other than for the ordinary expenses of the government "shall be made by separate bills, each embracing but one subject" (Const. 1874, art. 5, § 30), the unity of the subject of an appropriation bill is not broken by appropriating several sums for several specific objects which are necessary or convenient to the accomplishment of one general design, notwithstanding other purposes than the main design may thereby be subserved. (Page 580.)

4. SAME.—The act providing for the erection of a new state capitol and making an appropriation therefor does not violate the constitutional

inhibition against embracing more than one subject in an appropriation bill, although it provides that the capitol shall be located on the present penitentiary grounds, and authorizes the penitentiary board to procure new grounds and build a new penitentiary, and to pay for the same out of the fund at its disposal at the time the act was passed.   (Page 581.)

Appeal from Pulaski Chancery Court.

Thomas B. Martin, Judge.

*Jeff Davis*, Attorney General, and *Chas. Jacobson*, for appellant.

The act under consideration is unconstitutional in that it embraces two special appropriations under one head and in one bill.   Const. Ark. 1874 art. 6, §§ 29, 30; 7 So. 231; 4 La. Ann. 298; 13 Mich. 494; 32 La. Ann. 780; 39 Pac. 1096; 13 So. 688; 29 Pac. 771.   The erection of the new capitol is not a necessary expense of government, and it requires a vote of two-thirds of both houses to appropriate money therefor.   Const. art. 6, § 31.   The joint resolution was not legally passed.   It required the governor's assent.   Const. U. S. art. 1; Story, Const. §§ 881, 891; 6 Op. Atty. Genl. 680; 3 Dall. 378; 16 Ind. 46; 5 Pick. 64; 1. W. Va. 176; 11 N. E. 180; 30 Pac. 40; 91 Ind. 546.   Constitution is to be construed strictly.   5 Ind. 570; 7 N. Y. 9; 7 How. (Miss.) 724; 29 S. E. 364.

*Thos. M. Mehaffy, Jno. D. Shackleford* and *Carmichael & Seawel*, for appellees.

The bill did not contain two appropriations.   Matters incidental to the main object of the bill may be included.   32 Ark. 520; *id.* 417; 35 L. R. A. 188; 55 Kas. 751; 146 Ind. 189; 18 Ia. 767; 95 Tenn. 546; 88 Tex. 515; 114 Cal. 141; 58 Kas. 268; 58 N. J. L. 168.   A majority of two-thirds was not necessary, for the appropriation is for a "necessary" expense of government.   Art. 5, § 31, Const. Ark.   The legislature is the judge of what are such "necessary" expenses. Cooley, Const. Lim. 599, 200, 152, 154, 202, 220, 663; 15 N. Y. 545; 24 N. E. 6; 45 N. W. 33; 48 Ark. 370; 35 Ark. 73; 59 Ark. 513; 61 Ark. 21; 76 N. Y. 476; 35 Pac. 302; 30 La. Ann. 662; End. Int. Stat. §§ 375, 376, 421.   The presumption is that the legislature acted properly, and found the appropriation to be necessary.   28 Pac. 673; 27 Pac. 1098;

47 Pac. 359; 28 N. E. 358.   "Necessary" means "reasonably requisite and proper."   24 Conn. 347; 4 Wheat. 316; 46 Conn. 156.   The court can take judicial knowledge of the necessity for a new state house.   20 Minn. 453; 45 Mich. 135.

BATTLE, J.   This action involves the constitutionality of an act of the general assembly entitled, "An act to provide for the erection of a new State Capitol," approved April 17, 1899. For the purpose of erecting and completing a new state capitol building for the State of Arkansas at the city of Little Rock, in this state, this act provides for the appointment and organization of a board to be known as the "Board of State Capitol Commissioners," and, among other things, makes it their duty, as soon as practicable, to secure a suitable set of plans and specifications for the capitol building to be erected; and provides that the building shall be so planned that suitable quarters for all departments of the state government will be provided for in the best possible manner, and shall be fire proof and constructed of granite, brick and iron, and shall have a roof of either slate or sheet metal, and shall be provided with proper heating, lighting and ventilating apparatus and with the most modern sanitary arrangements; and that the reasonable cost of the building shall not exceed one million dollars. The act further provides that the board shall acquire, in the manner most economical and most desirable to the state, a piece of land suitable to the manufacture of brick and a granite quarry or a piece of granite land upon which a desirable quarry can be opened; and that the board shall appoint a superintendent of the granite quarry, who shall be a competent and experienced quarryman and shall have a thorough knowledge of stone cutting; and makes it the duty of the state penitentiary board to "turn over" to the board of state capitol commissioners such number of convicts as can be advantageously worked upon the construction of the capitol building and the manufacture of brick and the quarrying and cutting of stone therefor, not exceeding two hundred in number.   The act then makes the provisions contained in sections 11 and 12 of the act, which are as follows:

37

"Sec. 11. That, for the purpose of carrying out the provisions of this act for the employment of an architect, superintendence, the purchase of tools, machinery, lands for the manufacture of brick, and quarrying of stone or leases thereof, and for the transportation of materials, and other purposes necessary to the carrying out of the provisions of this act, there is hereby appropriated the sum of fifty thousand ($50,000) dollars out of any moneys in the state treasury which may arise from the sale of lands, except school lands, belonging to the state for the two (2) years commencing on the 1st day of April, 1899, and ending on the 31st day of March, 1901, and also all fees paid to the commissioner of state lands, and also the net proceeds of the labor of the state convicts during the same period.

"Sec. 12. The new state house shall be located on the present penitentiary grounds of the state. The board of penitentiary commissioners is hereby invested with authority to abandon the present penitentiary grounds of the state, to turn the same over to the state house board for the purposes provided in this act. The penitentiary board is authorized to procure new grounds at such place as they may select in Pulaski county; cause new buildings and walls to be constructed for use as a penitentiary, the expenses thereof to be paid out of the fund now at the disposal of said penitentiary board." Acts 1899, p. 212.

It is contended, in behalf of the state, that the act is unconstitutional for two reasons: (1) Because the building of a new state capitol is not a necessary expense of government, and the act was not passed by a majority of two-thirds of both houses of the general assembly; and (2) because the act embraces more than one subject of appropriation. The sections of the constitution of which it is said to be in violation are as follows: "No state tax shall be allowed, or appropriation of money made, except to raise means for the payment of the just debts of the state, *for defraying the necessary expense of government*, to sustain common schools, to repel invasion and suppress insurrection, except by a majority of two-thirds of both houses of the general assembly." "The general appropriation bill shall embrace nothing but appropriations for the ordinary expense of the executive, legislative and judicial departments

of the state.    All other appropriations shall be made by separate bills, *each embracing but one subject."*    Art. 5, §§ 31 and 30.

First.    There is nothing in the constitution of this state defining what is a necessary expense of government, or denying or limiting the right of the legislature to determine the question.    On the contrary, the right is impliedly delegated to it; for the power to appropriate money to defray the necessary expenses of government carries with it the right to determine what is a necessary expense.    Upon this principle, local and special laws have been upheld by this court, notwithstanding the constitution denies to the legislature the power to pass a a special or local law in any case where a general law, which would afford the same relief, could be enacted; holding that the power to pass a special or local act under given circumstances empowered it to determine when the circumstances existed.    *Davis* v. *Gaines*, 48 Ark. 370; *Boyd* v. *Bryant*, 35 Ark. 73; *Carson* v. *Levee District*, 59 Ark. 513; *Powell* v. *Durden*, 61 Ark. 21.

But how is it shown that the legislature decided that the building of a state capitol was a necessity of government? That question need not have been directly and expressly submitted for decision.    When the vote of either house was taken for the purpose of deciding whether the bill introduced for the purpose should be passed, it was the duty of the presiding officer to decide whether it received the majority necessary for it to become a law, and if, a majority so voting, he decided that it had, and no appeal was taken, the house thereby ratified, approved and adopted his decision.    When it had passed both houses in this manner, it was enrolled, and in that form was signed by the presiding officer of each house in attestation of the fact that it had passed both houses with the requisite majority, and, thus attested, was taken by a committee to the governor for his approval.    In this way the legislature declared that it had passed the bill by a constitutional majority, and thereby that the building of a new capitol was a necessity of government; for its action is referable only to the power under which it could have constitutionally passed the bill; and it thereby

accomplished what it had undertaken to do, because it had the authority.

Second.   Are there two subjects of appropriation in the act of April 17, 1899?   Similar questions have arisen under a clause of the constitutions of many states which declared that no act should relate to more than one subject, and that should be expressed in its title.   Under this clause, the courts have uniformly held that the unity of the subject of an act was preserved, and there was no violation of the constitution, so long as the different parts of the act relate, directly or indirectly, to the same general object fairly indicated by its title; and that the unity of object must be looked for in the ultimate end, and not in the details or steps leading to the end; for it is within the province of the legislature to determine and provide what means will contribute to the accomplishment of the general object of an act, and it may include under its title every means convenient or necessary or that may tend to carry into effect the main design, without regard to the secondary objects thereby accomplished.   In speaking of a section of the constitution of Kentucky which declared, "No law enacted by the general assembly shall relate to more than one subject, and that shall be expressed in the title," the Supreme Court of the United States said: "It is enough if the law has but one *general* object, and that object is fairly expressed in its title." Judge Cooley, in speaking of such clauses or sections, said: "The general purpose of these provisions is accomplished when a law has but one *general* object, which is fairly indicated by its title.   To require every end and means necessary or convenient for the accomplishment of this general object to be provided for by a separate act relating to that alone would not only be unreasonable, but would render legislation impossible." *Fletcher* v. *Oliver,* 25 Ark. 299; *People* v. *Mahaney,* 13 Mich 481, 495; *Ackley School District* v. *Hall,* 113 U. S. 135 *Carter County* v. *Sinton,* 120 U. S. 522; Cooley's Con. Lim (6 Ed.) p. 172.

From the doctrine of the cases referred to we deduce by analogy the following rule:   The unity of the subject of an appropriation is not broken by appropriating several sums for several specific objects, which are necessary or convenient or

tend to the accomplishment of one general design, notwithstanding other purposes than the main design may be thereby subserved.  As an illustration, suppose the legislature provides for the building of a capitol and appropriates a certain sum for the purchase of the brick used in its construction, a certain sum for the granite, a·certain sum for all other materials, and a certain sum for all the labor performed in its erection.  There would be but one subject of appropriation, and that would be the construction of a capitol, and the sum total of all these appropriations would constitute only one appropriation made for that purpose.

But it is said that there are two subjects of appropriations in the act of April 17, 1899, and they are a new capitol and a new penitentiary.  This statement is not accurate.  The board of state capitol commissioners is not unlimited in its power to build a capitol.  They are required to build it on the "present penitentiary grounds of the state."  They can build it in no other place.  The subject of the act is, then, the building of a state capitol upon the ground now occupied by the penitentiary. The legislature had the unquestionable right to select the location and fix the dimensions of the ground to be used for that purpose.  In the exercise of this right, they set apart the whole of the penitentiary ground for the site.  When they located it as they did, they knew that the destruction of the present penitentiary will necessarily follow, and that some place will be needed for the confinement and safe-keeping of convicts when they will not be lawfully employed outside of the penitentiary walls. The laws of the state require a prison to be maintained for that purpose.  The penalty for every felony which is not capital is imprisonment in the penitentiary.  They doubtless foresaw that the building of a penitentiary cannot be postponed until the building of a new capitol, which will probably occupy many years, will be completed.  They obviously found that it is necessary to procure other grounds, and to build a new penitentiary for the convicts to occupy when the old will be vacated, before the capitol can be located and erected as they desired or intended; that this is an obstacle which must be first removed; and that the necessity of the state demands it.  To provide for this necessity, they authorized the penitentiary board to procure other grounds, and cause new buildings and walls to be

constructed for use as a penitentiary. This will be necessary, just as it is necessary to clear away the dense and heavy timber and undergrowth that encumber a lot of ground before the erection of a building on the same. The money that will be expended in the purchase of ground and the building of a new penitentiary will be in aid and for the furtherance of the main subject of appropriation, and will be expended in replacing what will be used in the accomplishment of the main object of the act; and the authority so to use it is equivalent to an appropriation of money to purchase grounds for the location of a capitol. In fact, every appropriation and provision in the act relates or contributes to the accomplishment of its general object—the building of a new capitol upon the penitentiary grounds.

The provisions made for the building of a penitentiary are peculiar. This act authorizes the penitentiary board to pay for the grounds, buildings and walls out of the fund at its disposal at the time the act was passed. The money to be expended and liabilities to be incurred are limited by this fund. No other fund can be used, the liabilities incurred cannot exceed it, and the limits of expenditures are circumscribed by it. No separate appropriation, however, was made, but the board was authorized to use the fund already at its disposal for other and additional purposes, which are specified.

Giving to the act the benefit of all reasonable doubts as to its validity, which it is our duty to do, we hold that it is constitutional.

Decree affirmed.