## BELOTE *v.* COFFMAN.

### Opinion delivered March 15, 1915.

1. LEGISLATIVE APPROPRIATIONS—EXPENSES OF GOVERNMENT—QUESTION FOR JUDICIAL DETERMINATION.—The restriction contained in art. 5, § 30, Const. 1874, requiring that appropriations made by the Legislature, not made to pay necessary expenses of government, shall be passed by a two-thirds majority in each house of the Legislature, makes it a question of law for the courts to determine whether the appropriation under consideration comes within the meaning of the Constitution; that is, whether it is an appropriation for defraying the necessary expenses of government.

2. LEGISLATIVE APPROPRIATIONS—EXPENSES OF GOVERNMENT—JUDICIAL QUESTION.—The action of the Legislature in making an appropriation, is not conclusive that the same was to defray a necessary expense of government, and is not binding on the courts.

3. LEGISLATIVE APPROPRIATIONS—DEPARTMENTS OF GOVERNMENT—NECESSARY EXPENSES.—The Legislature has the power to create temporary departments of government, and, when it has done so, appropriations for their support will be treated as appropriations for the ordinary expenses of government.

4. LEGISLATIVE APPROPRIATIONS—EXPENSES OF GOVERNMENT.—An act of the Legislature appropriating money for an exhibit of the resources of the State of Arkansas at the Panama-Pacific Exposition, *held* to provide for such an appropriation which, under art. 5, § 31, Const. 1874, is not a necessary expense of government, and required a two-thirds vote of each house of the Legislature in its favor to render it valid.

5. LEGISLATIVE APPROPRIATIONS—TWO-THIRDS VOTE.—The expression in sec. 30, art. 5, Const. 1874, which provides that no appropriation of money except for certain causes shall be passed "except by a majority of two-thirds of both houses of the General Assembly," *held* to provide for a two-thirds majority vote in each house of the Legislature separately.

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; reversed.

*Hal L. Norwood,* for appellant.

The real question to be determined in this case is whether or not the appropriation is for the purpose of "defraying the necessary expenses of government," within the meaning of the Constitution. If it is not a necessary expense of the government of the State, it is obviously the duty of the court to declare the act void as having failed to receive two-thirds vote of each house of the General Assembly. Art. 5, § 31, Const. 1874; 76 Ark. 199; 2 Law Ed., (U. S.) 60; 123 U. S. 623; 66 Ark. 575.

Appropriations for exhibiting the State's resources at expositions have never been recognized as being necessary expenses of government either by the judicial or by the executive departments of the State, neither have they been so construed by the legislative department, until this act was passed, as witness the printed journals of the Senate and House. Columbian Exposition Appropriation 1893, S. B. No. 179, S. J. 366; H. J., pp. 564, 595; Louisiana Purchase Exposition Appropriation, 1901, S. B. No. 95, S. J. 200; H. J. 494 and 507; Supplemental Louisiana Purchase Exposition Appropriation, 1903, S. B. No. 42, S. J. 107, H. J. 382 and 391, and same bill on its return to the Senate for concurrence in amendments, S. J. 277, and 291.

The legislative determination in this case that the appropriation is for a necessary expense of the government, is not conclusive upon the courts. 78 Ark. 432; 106 Ark. 506; 27 Ark. 266; 105 Ark. 380; *Cotton* v. *City of Benton,* 117 Ark. 190, *infra;* 77 S. E. 264; 139 Pac. 685.

*W. L. Moose,* Attorney General, and *Rose, Hemingway, Cantrell, Loughborough & Miles,* for appellee.

1. The Legislature has done everything possible to declare that this bill has been duly passed, and consequently that it is for necessary expenses of the State government. The legislative finding is conclusive. This court has wisely reserved the right to control arbitrary abuses of the legislative power, but it can not be said that the Legislature has abused its power in this instance.

The Constitution has entrusted to that body the determination of the question whether an expense is necessary, and it should, as this court has said, require a very plain abuse of power to justify an interference by the judicial department. 66 Ark. 575, 579; 76 Ark. 197, 202; 169 S. W. 802; 114 Ark. 212.

It is plainly apparent that the word "necessary" as used in this connection, does not mean "indispensable," but only that it is appropriate to the end sought. See Words & Phrases, and cases there cited.

If it be conceded that the Legislature may, by a bare majority, vote money for advertising the resources of the State in one way, as for instance for the Commissioner of Mines, Manufactures and Agriculture, a mere advertising bureau it is not apparent on what principle it could be held that an appropriation for advertising in a different way would be beyond the power of that body. See 113 Ark. 493, 168 S. W. 1066; *Id.* 849. The cases hold that an appropriation for any reasonable municipal purpose, such as to install electric light plants, water and sewer systems, to improve streets, etc., are necessary expenses. 45 S. E. 948, 950, 133 N. C. 587; 45 S. E. 1029, 1030, 134 N. C. 125; 63 S. E. 167, 150 N. C. 35; 72 S. E. 460, 156 N. C. 402; 53 S. E. 229, 140 N. C. 429; 3 Cushing, 530, 533; 29 S. E. 368, 142 N. C. 420. Yet in the case of municipal corporations there is no such presumption in favor of their law-making bodies as is indulged in the case of a co-ordinate branch of government like the Legislature, to which the Constitution has entrusted in the first instance the determination of the question of a necessity, and whose discretion can be overruled only in case of palpable abuse.

2. The act was passed by two-thirds majority of both houses. The word "house" as used in article 5, section 30 of the Constitution, refers to the membership present at the time the vote is taken. Note the distinction made by the Constitution itself on this point in section 26 of the same article, where, in dealing with appropriations to pay for services after they have been rendered, it provides that it is necessary that the bill

be passed by "two-thirds of the members elected to *each* branch of the General Assembly." See, also, section 21, same article. 144 U. S. 6; 35 Atl. 932-934, 84 Md. 304; 21 La. Ann. 79-103; 46 So. 268, 20, 154 Ala. 249; 26 Fla. 281, 8 So. 429.

HART, J. During the session of the Legislature just ended, (session of 1915), an act was passed entitled, "An Act to Appropriate Money for an Exhibit of the Resources of the State of Arkansas at the Panama-Pacific International Exposition of 1915, and for other purposes." The act appropriated $40,000 for the purpose of exhibiting the resources of the State at that exposition. The bill received a two-thirds majority of those voting thereon in the Senate but did not receive a two-thirds majority of those voting thereon in the House of Representatives.

Joel C. Belote, a citizen and taxpayer of this State, instituted this action in the chancery court against L. L. Coffman as Auditor and R. G. McDaniel as Treasurer of the State of Arkansas. The plaintiff prayed that Coffman be enjoined and restrained from issuing warrants upon the appropriation provided in the act, and that R. G. McDaniel as treasurer be enjoined from paying any warrants under the provisions of the act, and that said act be declared void.

The chancellor found the issues in favor of the defendants and the complaint was dismissed for want of equity. The plaintiff has appealed.

As shown by the statement of facts, the bill received a two-thirds majority of those voting thereon in the Senate but did not receive a two-thirds majority of those voting thereon in the House of Representatives. Therefore counsel for the plaintiff contends that the bill failed to receive the necessary affirmative vote required by article 5, section 31, of the Constitution, and never became a law.

On the other hand, it is contended by counsel for the defendant that the action of the Senate and House of Representatives constituted a declaration that the appropriation was for a necessary expense of the State

government as contemplated by the clause of the Constitution just referred to and that on this account a majority vote was all that was necessary for the passage of the act.

Article 5, section 31, of the Constitution, reads as follows:

"No State tax shall be allowed, or appropriation of money made, except to raise means for the payment of the just debts of the State, for defraying the necessary expenses of government, to sustain common schools, to repel invasion and suppress insurrection, except by a majority of two-thirds of both houses of the General Assembly."

This clause of the Constitution has been construed in the cases of *State* v. *Sloan,* 66 Ark. 575, and *State* v. *Moore,* 76 Ark. 197, and counsel for the defendants rely upon these cases to uphold the decree of the chancellor.

In the case of *State* v. *Sloan, supra,* the court held: "Where a bill making appropriation for building a new capitol received a majority merely of the votes of both houses of the General Assembly, and the presiding officers of both houses decided that the bill received the majority necessary for it passage, from which decision no appeal was taken, it will be inferred that the Legislature ratified the acts of its officers, and thereby declared that the act was constitutionally passed, and therefore that the building of a new capitol was a necessary expense of government."

In the case of *State* v. *Moore, supra,* the court held that an appropriation to promote the efficiency of the Arkansas State Guard is an appropriation to meet the necessary expenses of the government within the meaning of the Constitution of 1874, article 5, section 31, which may be passed by a majority vote simply.

In that case the court, after quoting some of the language of the decisions in the case of the *State* v. *Sloan, supra,* used this language:

"The court in the *Sloan* case did not mean to lay down the doctrine, nor do we now, that the power of the Legislature to determine what is a necessary expense of

government is arbitrary, bounded by no limitations, and absolutely beyond control by the judicial department. We can readily call to mind subjects for appropriations so obviously beyond the scope of what may be deemed necessary expenses of government that the courts could, and in duty should, ignore a legislative determination, and declare as a matter of law that the same do not fall within that class. The words 'necessary expenses of government,' as employed in the Constitution, do not refer to the necessity, expediency, or propriety for the amount of the appropriation, but are intended as a classification of a character of expenses which may be provided for by appropriations without the concurrence of more than a majority of both houses of the Legislature; and when the expense is such as may fall within that classification, and the Legislature has made appropriation to defray the same, the courts must accept as final the legislative determination that they are necessary expenses of government. The preceding section of the Constitution regulating appropriations to defray the ordinary expenses of government, when read with the section now under consideration, makes a distinction between the 'ordinary expense of government' and other necessary expenses, and is a distinct recognition by the framers of the Constitution of the fact that there may be necessary expenses of government which are not ordinary expenses, and that the Legislature may, by a bare majority vote, make appropriations to defray the same. If they be necessary expenses of government—that is to say, proper and necessary expenses incurred in the administration of government—appropriations therefor may be made by a majority vote only, though they be extraordinary, and not incurred as ordinary expenses in the administration of government."

We do not think the principles as announced in these cases sustain the position assumed by counsel for the defendants.

Obviously the decision in the *Sloan* case was correct. It is necessary that the State provide buildings in which its officers may have rooms in which to transact

the business of the State and discharge the duties of their respective offices. If the present statehouse should be destroyed by a tornado, or by any other means, it would be the duty of the Legislature to provide a new statehouse and its action in doing so would be a necessary expense of the government within the meaning of the clause of the Constitution quoted.

Article 11, of our Constitution, provides for the establishment of militia and states the contingencies under which the Governor may have power to call them out to execute the laws of the State, repel invasion, etc. Therefore, the establishment and maintenance of the State militia is essentially a State institution, or rather an arm of the government resort to which can only be had upon the failure of all other governmental authority. This was recognized in the *Moore* case and the court distinctly held that under the Constitution an organized militia is provided for and is recognized as a part of the executive branch of the State government.

It is not necessary in this case that we should attempt to draw an exact line of demarcation between what are and what are not necessary expenses of government. There are some things that are clearly within the line of the power and there are others that are outside of the line of necessary expenses of government. We are of the opinion that the appropriation in question is clearly outside of the line.

(1-2) The power of the Legislature to determine what is a necessary expense of government must stop somewhere. The restriction contained in the Constitution was not intended to be meaningless. It is a question of law for the court to determine whether the appropriation under consideration comes within the meaning of the Constitution—that is, whether it is an appropriation for defraying the necessary expenses of government. The action of the Legislature in making the appropriation was not the ascertainment of a fact but was a conclusion of law merely; and therefore not binding on us.

(3) It is insisted by counsel for the defendant that the appropriation in question was made for the

purpose of exhibiting the State's resources at the Panama-Pacific exposition and that it is just as much an appropriation for defraying the necessary expenses of government as are appropriations for the maintenance and support of the bureau of agriculture, mining and manufacturing. It will be noted, however, that article 10, of our Constitution, provides that the General Assembly may create a bureau to be known as the mining, manufacturing and agricultural bureau. Pursuant to this article of the Constitution the Legislature has created that department and appropriations for its support and maintenance clearly fall within the ordinary expenses of government contemplated under section 30, of article 5, of our Constitution. The Legislature has also the power to create temporary departments of government, and when it has done so, appropriations for their support are also for the ordinary expenses of government.

If we should hold that the appropriation in question is an appropriation for defraying the necessary expenses of government, it is difficult to see what appropriations would fall outside the limitations imposed by the clause of the Constitution under consideration in this case. It is plain from the principles of law announced in the case of *State* v. *Moore, supra,* that the Legislature can not make an arbitrary conclusion of what is necessary for defraying the necessary expenses of the State government. If so the court would not have based the decision in that case on the ground that the establishment and maintenance of militia was an arm of the executive branch of the government and provided for in the Constitution. It would simply have held that the Legislature was the judge of what constituted a necessary expense of the State government and its determination of that fact would be binding upon the courts.

(4) For the reasons already stated, we are of the opinion that the appropriation in question does not fall within the classification of expenses which may be provided for by appropriation without the concurrence of more than a majority of both houses of the Legislature

and we believe that the appropriation is obviously be-yond the scope of what may be deemed necessary expenses of government.

It is urged that the appropriation in question is for a purpose that would greatly benefit the people of the State of Arkansas; but that is a consideration which addressed itself to the Legislature and can not be considered by us. Our plain and paramount duty is to obey and enforce the Constitution, in the face of which all other considerations must give way.

(5) It is contended by counsel that the phrase ''except by a majority of two-thirds of both houses of the General Assembly,'' in the clause of the Constitution in question means two-thirds of the aggregate vote on the bill in both the House and the Senate. The aggregate vote in favor of the bill in the House and Senate constituted more than two-thirds of those voting on the bill in the House and Senate combined. Therefore it is insisted by counsel for the defendant that the bill passed by a majority of two-thirds of both houses of the General Assembly, as contemplated in the Constitution. Upon this contention but little need be said. Under our system of government the Senate and the House are separate and independent bodies and vote separately upon every bill presented to them.

It follows that the decree must be reversed and the cause remanded with directions to the chancellor to enter a decree in accordance with the prayer of the plaintiff in his complaint.