HUMPHREY, STATE AUDITOR *v.* GARRETT.

4-9264                                         236 S. W. 2d 569

Opinion delivered February 19, 1951.

*Ike Murry,* Attorney General, and *Robert Downie,* Assistant Attorney General, for appellant.

*Neill Bohlinger,* for appellee.

GRIFFIN SMITH, Chief Justice.  Act 166, approved February 25, 1949, appropriates $50,000 for each year of the biennium ending June 30, 1951.  The purpose expressed in Sec. 1 is to support and assist colleges of the state having at the time the Act was passed a senior class in pharmaceutical education.  Section 2 authorizes the State Board of Pharmacy to spend the appropriation as made in Sec. 1 and invests the Board with full power "to use its discretion in the manner in

·which said funds shall be disbursed so long as the intention of the Act is carried out.''

F. B. Garrett, a taxpaying citizen, brought an action to restrain J. Oscar Humphrey as Auditor of State from converting into warrants vouchers drawn against the appropriation, and to prevent J. Vance Clayton as Treasurer of State from paying any warrants that had been issued. He alleged that, inasmuch as the appropriations were from the general revenue fund, the vote in the House of Representatives upon which passage of the measure had been sustained by the presiding officer was insufficient under the constitution to accomplish the intended purpose because (a) the general revenue fund was not made up of moneys raised or collected for educational purposes or for any of the excepted purposes set out in Amendment No. 19 to the constitution; (b) at the time Act 166 was passed more than $2,500,000 had been appropriated for the biennial period beginning July 1, 1949; (c) only one college could qualify under the Act, and it was a denominational or religious school; and, (d) the design of expenditure brought the appropriation within the terms of Art. 5, Sec. 31, of the constitution.

It was stipulated that the legislation originated as House Bill No. 54 and received 65 affirmative votes on final roll call—less than two-thirds of that body.

The proof showed that the one educational institution capable of qualifying under the Act was the College of the Ozarks at Clarksville, where a department of pharmacy was established in 1946 at the request of the State Board of Pharmacy. Dr. Fred Walker, president of the institution, testified that it was the synodical college of the Presbyterian Church, U.S.A., but said that students in the school of pharmacy were not given religious instructions; that applicants of all faiths and of no faith would be accepted if otherwise qualified.

Our determination turns upon the two constitutional requirements for voting, and other questions are not reached. Article 5, Sec. 31, presents little difficulty.

It provides that "No state tax shall be allowed, or appropriation of money made, except to raise means for the payment of the just debts of the state, or for defraying the necessary expenses of government, . . ." etc. We have held that the legislature has the right to determine what is a necessary expense. *State* v. *Sloan,* 66 Ark. 575, 53 S. W. 47, 74 Am. St. 106; *State* v. *Moore,* 76 Ark. 197, 88 S. W. 881, 70 L. R. A. 671. But this determination can not be arbitrary to such an extent that things or purposes clearly "outside of the line of necessary expenses of government" may receive monetary benefactions. In such cases the courts hold as a matter of law that the constitutional provision is the bulwark its framers intended. *Belote* v. *Coffman,* 117 Ark. 352, 175 S. W. 37. In *Hudson* v. *Higgins,* 175 Ark. 585, 299 S. W. 1000, it was held that where the state had adopted a policy involving the education of a part of its citizens and a school had been established for that purpose, its maintenance became a necessary expense of government within the meaning of Art. 5, Sec. 31.

The result of our decisions affecting the constitutional provision in question is that the legislative discretion will not be disturbed. It is only in those cases where the discrepancy between an expressed objective and *actuality* is so great that no reasonable person would believe that the purported purpose was a necessary expense of government that the courts will intervene. The facts here do not justify us in holding that the general assembly was wrong *as. a matter of law* in saying that the appropriation it sought to make by House Bill No. 54 was for necessary expenses of government.

But while Art. 5, Sec. 31, is not an impediment, Amendment No. 19 was properly invoked. The wisdom of the policy that burdens appropriations with this handicap may be questioned and the procedure criticized, yet the fact remains that in 1934 the electorate adopted the amendment by a vote of 99,223 to 25,496—a majority of almost four to one.

It is insisted, however, that the clear intent was to exempt appropriations of the kind we are dealing

with. This, say appellants, is true because the first sentence of the third section of the amendment creates a classification that is excluded from the three-fourths vote requirement—*"Except moneys raised or collected for educational purposes,"* etc. It must be conceded that a school of pharmacy necessarily has an educational aim, and if the appropriation had been made from any tax source bottomed on education, or if it had been from an available school fund within the purview of Amendment No. 19, then a majority vote of members elected to each branch of the general assembly would have been all that was required, in so far as Art. 5, § 31, and Amendment No. 19, are concerned.

In Act 166, unfortunately, the authority to draw vouchers and to pay with warrants designated the *general revenue fund.* State Comptroller Lee Roy Beasley testified that prior to 1945 a multiplicity of accounts had been maintained in the treasurer's office—more than 100. Act 311 of 1945 reclassified them under five principal headings. One division was General Revenues (note the plural). From the various sources spoken of the General Revenue Fund (singular) was set up through percentage charges against other revenues and from independent sources. Act 311 of 1945 was amended by Act 114 of 1947; Act 114 was in turn amended by Act 489 of 1949, and the 1945 and 1947 measure were further amended by Act 490 of 1949. Largely, however, the general revenue *fund* comes from a percentage charge against *funds.*

Since we are not concerned with particular legislation other than Act 166, but only with practical results, it may be said that the *general fund* becomes, in a sense, a residual available for miscellaneous operational purposes—such, for instance, as payment of the necessary expenses itemized in the general appropriation bill (see § 30, Art. 5 of the constitution and § 4 of Amendment No. 19). An example is to be found in Act 50 of 1949. The availability of this *fund,* when dealt with under the restrictions of Amendment 19, is not confined to a par-

ticular purpose when other constitutional necessities are met.

But while the general revenue *fund* is available for any lawful use, it does not follow that an allotment from it, made after $2,500,000 has been appropriated for the biennium, may be made by a bare majority of all members elected to each branch of the general assembly in reliance on the phrase, *"Except moneys raised or collected for educational purposes."*

It is urged that because cash or its equivalent in credits coming to the general *fund* by reason of levies and percentage transfers had a generic origin in General Revenues or may have come from some unpledged source, a presumption arises that when commingling occurred *some* money raised or collected for educational purposes went to this *fund;* and no doubt this is true. The judicial duty, however, is to construe the constitution in such a way that an expressed purpose, or a result flowing from reasonable implication, will be given effect.

We know that Amendment No. 19 was adopted during the depression days following 1933, and while language used by those who drafted the proposal clearly excludes from its stringent provisions moneys raised or collected for educational purposes, we must consider the amendment in the light of laws and practices effective at that time. If by fair analysis it could be said that the selected words in the order used were sufficiently elastic for adaptation to changes in systems, still it is not possible to believe that the exception in favor of moneys raised or collected for educational purposes is broad enough to support appellants' contentions in the case at bar.

We express no opinion regarding validity of the so-called stabilization law or the procedures promulgated by amendatory Acts. Our decision goes only to Amendment No. 19 and its effect on Act 166, and to Art. 5, § 31, of the constitution.

For the reasons mentioned the decree must be affirmed, and it is so ordered. The Clerk is directed to issue an immediate mandate.

Mr. Justice GEORGE ROSE SMITH did not participate in the consideration or determination of this case, his disqualification having been certified to the Governor, who designated the Honorable RALPH ROBINSON as special judge.