G. W. TURNER *v.* Preston WOODRUFF, Jr., et al, BD. OF DIRECTORS OF ARK. STUDENT LOAN AUTH., ARK. STUDENT LOAN AUTH., Pat SILES, Exec. Dir. of Ark. Student Loan Auth., and SIMMONS FIRST NAT'L BK.

85-23                                        689 S.W.2d 527

Supreme Court of Arkansas
Opinion delivered May 20, 1985

*Allen, Cabe & Lester*, by: *V. Markham Lester*, for appellant.

*Steve Clark*, Att'y Gen., by: *Curtis Nebben*, Dep. Att'y Gen. and *Wright, Lindsey & Jennings*, by: *W. J. Williams, Jr.*, for appellee.

JACK HOLT, JR., Chief Justice. This is an action challenging the authorization of certain revenue bond issues for student loans. Our jurisdiction is pursuant to Sup. Ct. R. 29(1)(a) inasmuch as it involves the interpretation of Article 16, § 1 and Amendment 20 of the Arkansas Constitution.

In June 1984, the Board of Directors of the Arkansas Student Loan Authority adopted a resolution authorizing the issuance by the Student Loan Authority of $10,000,000 of Student Loan Revenue Bonds, Series 1984A, and $20,000,000 of Student Loan Revenue Refunding Bonds, Series 1984B, pursuant to Ark. Stat. Ann. § 80-4036 (Repl. 1980). No public election was held nor was one scheduled to authorize the issuance of the bonds.

■ The Student Loan Authority is a state agency created by Act 873 of the 1977 Acts of Arkansas, codified and amended in Ark. Stat. Ann. §§ 80-4032—80-4052 (Repl. 1980). Its stated purpose is to acquire guaranteed student loan notes and make direct loans in accordance with Title IV, Part B of the Higher Education Act of 1965 (20 U.S.C. § 1071 *et seq.*) as amended, to qualified students for payment of educational expenses while attending participating institutions. § 80-4033. Guaranteed student loans may be made under Act 873 only to students who meet the qualifications set forth in the Higher Education Act of 1965, as amended, and who are residents of Arkansas or who have been accepted for enrollment or are attending a participating institution within the state. A participating institution is any post high school educational institution, public or private, whose students are eligible for guaranteed student loans. § 80-4032(E).

■ To provide the necessary funding for the program, § 80-4036 authorizes and empowers the Authority to issue revenue bonds from time to time in such principal amounts as deemed necessary. The Act does not require approval by the electorate, but rather demands prior consent by the Arkansas State Board of Finance. In addition, the face of the bonds must plainly state that the bonds are obligations only of the Arkansas Student Loan Authority, and that in no event shall they constitute an indebtedness for which the faith and credit of the State of Arkansas or any of its revenues are pledged, and that they are not secured by a mortgage or lien on any land or buildings owned by the state. § 80-4037.

The appellant, G.W. Turner, brought this action as a taxpayer, resident and citizen of Jefferson County, Arkansas, to enjoin enforcement of an allegedly "illegal exaction of state revenues" by the appellees. The appellees are the Arkansas Student Loan Authority, its executive director, seven members of the Board of Directors, and Simmons First National Bank of Pine Bluff, which has previously been active in originating and selling student loans to the Authority, and would do the same in connection with the bond issue being challenged here.

Appellant petitioned the Jefferson County Chancery Court for a declaratory judgment and an injunction based upon three grounds:

I. The bonds violate Article 16, Section 1, as amended

by Amendment 13, and Amendment 20 of the Arkansas Constitution because they lend the credit and pledge the revenues of the State;

II. The Arkansas Student Loan Authority Act violates Article 5, §§ 1 and 2 of the state constitution because it impermissibly delegates legislative power to the United States Secretary of Education; and

III. The bonds are illegal because they are not issued for a "purely essential" or "genuine" public purpose.

The chancellor's adverse findings on each of these points are the basis for this appeal.

I.

█ In *Murphy* v. *Epes*, 283 Ark. 517, 678 S.W.2d 352 (1984), we provided a two part test for determining the validity of revenue bonds: (1) they must not violate the state constitution and (2) they must be for a public purpose." 283 Ark. at 521. We find that the proposed bond issues meet both tests and affirm the findings of the trial court.

█ Article 16, § 1 of the Arkansas Constitution, as amended by Amendment 13, prohibits the state, or any county, town or municipality of the state from lending its credit for any purpose, or issuing interest-bearing evidences of indebtedness, except authorized bonds for payment of an indebtedness existing when the 1874 constitution was adopted or a bond issue approved by a majority of the electorate. (The article provides for payment of the bonds issued thereunder from the levy of a special tax on real and personal property within the municipality.)

Amendment 20 of the Arkansas Constitution prohibits the state from issuing bonds without an election.

The issue before us is whether Act 873 of 1977 violates Amendment 20 and Article 16 wherein the Act authorizes the issuance of revenue bonds without an election. We find that it does not.

█ In the case at bar, the Student Loan Authority bonds will be repaid from income derived from the loan notes and investments, with interest payments coming from the federal

government. Ark. Stat. Ann. § 80-4042. As in *Murphy*, these bonds must and do clearly state on their face that they do not constitute an indebtedness or obligation of the State of Arkansas.

## II.

Appellant's second argument is that the Student Loan Authority Act delegates legislative power in violation of Article 5, § 1, as amended by Amendment 7 of the Arkansas Constitution, and Article 4, §§ 1 and 2. We disagree.

The Student Loan Act provides that eligibility for a loan depends in part upon meeting the requirements of the Higher Education Act of 1965. Ark. Stat. Ann. §§ 80-4032, 80-4039. Act 873, § 8 provides that: "No loan shall be made under the Act to any student who would not qualify to have on his behalf the federal interest benefits as authorized by Title IV, Part B of the Higher Education Act of 1965."

The only issue is whether the reliance on federal standards for loan qualification is an unconstitutional delegation of legislative power.

The basic rule of law as restated in *Arkansas S & L Ass'n Bd.* v. *West Helena S & L*, 260 Ark. 326, 538 S.W.2d 560 (1976), is:

> [T]he functions of the Legislature must be exercised by it alone. That power cannot be delegated to another authority. [Cites omitted.]

However, non-legislative powers are delegable by the legislature.

> Thus, the rule is that in order that a court may be justified in holding a statute unconstitutional as a delegation of legislative power, it must appear that the power involved is purely legislative in nature—that is, one appertaining exclusively to the legislative department. It is the nature of the power, and not the liability, its use or the manner of its exercise, which determines the validity of its delegation.

*Arkansas S & L Ass'n Bd.*, supra, (quoting 16 Am. Jur. 2d *Constitutional Law*, § 242.)

In *Arkansas S & L Ass'n Bd.* we held the statute requiring

savings and loan associations chartered by the state to have their savings accounts insured by the Federal Savings and Loan Insurance Corporation (FSLIC) or other federal agency was not an unconstitutional delegation of legislative power. 260 Ark., at 339. There the FSLIC had denied the West Helena Savings and Loan Association's application for insurance. Thereafter, the Association's charter was cancelled pursuant to Ark. Stat. Ann. § 67-1831 (Repl. 1980), and the Association filed suit. Our decision rested upon the findings that the FSLIC was not required to do anything under the statute and that the Federal Housing Loan Bank Board, which conducted hearings on applications for insurance with FSLIC, was not mentioned in the statute. *Id.*, at 336.

■ Similarly in the case at bar, the Student Loan Act does not require any action on the part of the Secretary of Education or any other federal agent or agency. The Act anticipates interest payments from the federal government, but an anticipation is far short of a *delegation*. The Act does not mention any function to be performed by the federal government. As in *Arkansas S & L Ass'n Bd.*, we do not find a delegation of legislative power in this act.

## III.

What constitutes a public purpose is for the General Assembly to determine. *Murphy,* supra. Although ultimately the propriety of a proposal's stated purpose is resolved by the judiciary, great weight must be given legislative determinations of public purposes. See *Kerr* v. *East Central Ark. Regional Housing Auth.*, 208 Ark. 625, 630, 187 S.W.2d 189 (1945); 64 C.J.S. *Municipal Corporations* § 1905, p. 479 (1950); see also *Brodhead* v. *City & County of Denver*, 126 Colo. 119, 247 P.2d 140 (1952).

■ Moreover, we said in *Murphy,* supra, that:

[T]he determination of whether legislation fulfills a public purpose is a legislative decision and a court will reverse that decision only if the legislature acted arbitrarily, unreasonably or capriciously. The court should not substitute its own judgment for that of the legislature.

■ Furthermore, we have said:

It is only in those cases where the discrepancy between an expressed objective and *actuality* is so great that no reasonable person would believe that the purported purpose was a necessary expense of government that the courts will intervene.

*Humphrey, State Auditor* v. *Garrett*, 218 Ark. 418, 236 S.W.2d 569 (1951).

Appellant cannot reasonably argue that education is not of a public nature. The state constitution is evidence that the people of Arkansas feel education of its citizenry, even to the extent of publicly financing it, is a public necessity.

Article 14, § 1 of the constitution reads:

*Free school system.*—Intelligence and virtue being the safeguards of liberty and the bulwark of a free and good government, the State shall ever maintain a general, suitable and efficient system of free schools whereby all persons in the State between the ages of six and twenty-one years may receive gratuitous instruction.

Amendment 53 of the Arkansas Constitution removes the age limitation of Article 14. In addition, Amendment 52 authorizes the General Assembly to establish and provide a method of financing for community colleges. *See DuPree* v. *Alma School District No. 30*, 279 Ark. 340, 651 S.W.2d 90 (1983).

The legislature's enactment of Act 873 clearly indicated that public support of educational financing is a public purpose. The emergency clause states in part:

It is hereby found and determined by the General Assembly that there is an urgent need for providing a secondary market for student loan notes and establishing a fund for the making of student loans; that at the present time the only operating program for providing such funds is dependent upon private financial institutions furnishing the funds for such loans with such loans being guaranteed by the government, but being investments which considering their rate of return, maturity and servicing requirements, private financial institutions have been unable to make the extent required; that it is urgent that a new program be established whereby bonds may be issued by a state agency

or non-profit corporation with the proceeds of such bonds to be used for making student loans and purchasing student loan notes thereby making more readily available educational loans to deserving young people who may now find it difficult to obtain a loan from private institutions.
. . .

Acts of 1977, No. 873, § 25, p. 2222.

Appellant contends that because non-residents of the state are eligible to receive loans under the act it is invalid. This contention is unsupported and noncompelling. A diversified student body is a desirable characteristic of college and university campuses. It is well known that a significant part of a student's learning is acquired from other students. Therefore the ability to draw students from other states with varying experiences and backgrounds is in keeping with the overall public purpose of enhancing education.

Appellant has not provided us with any reason to find that Ark. Stat. Ann. § 80-4032 et seq., or Act 873 lacks public purpose.

Affirmed.

HICKMAN, J., dissents.

PURTLE, J., concurs for the reasons stated in *Murphy* v. *Epes*, 283 Ark. 517, 678 S.W.2d 352 (1984).