Don VENHAUS, Pulaski County Judge, Pulaski County,
Arkansas *v.* Gary ADAMS, et. al.

87-305                                      752 S.W.2d 20

Supreme Court of Arkansas
Opinion delivered May 31, 1988

*Ivester, Henry, Skinner & Camp*, by: *Stephen L. Curry*, for appellant.

*Brent Baber* and *Lester W. Mattingly*, by: *Lester W. Mattingly*, for appellees.

HARRY TRUMAN MOORE, Special Chief Justice. This is an appeal from a judgment of the Pulaski County Chancery Court granting judgment for overtime pay incurred during a limited period of time to each of the appellees, who were, during the period of time in question, all deputies in the Pulaski County Sheriff's office. Appellants, Don Venhaus, Pulaski County Judge, and Pulaski County, Arkansas, argue that the trial court erred in determining that Pulaski County is liable for overtime compensation because: (1) the deputies were salaried employees and no legal authority exists for overtime compensation; (2) no legislative appropriation for funds for overtime compensation had been enacted; and (3) no authority exists for the payment of overtime of one and one-half (1-½) times the deputies' rate of pay. We agree with appellant's position on all three issues and reverse.

Appellees were at all times relevant to this cause deputy sheriffs from the Pulaski County Sheriff's office, and had been hired on a salaried basis pursuant to a salary and budget ordinance which established various positions within the sheriff's office by rank, number of positions for each rank, and salary for each position. It is clear from the testimony that appellees often were required to work hours in excess of 40 hours, and that there had been various methods used by the sheriff's department in at

least two different administrations in determining whether compensatory time off or overtime pay would be given for hours in excess of 40 hours per week.

Throughout the time in question, there was no standard method for either reporting compensatory time, with various divisions within the sheriff's department having various methods of recordkeeping, or determining how much compensatory time would be given for hours in excess of 40 hours per week, with the testimony varying that compensatory time was given on a "straight-time" basis, "time and one-half" basis, and even a "two-for-one" basis.

The period covered by the lawsuit also included the entire first term of Mr. Tommy Robinson as Sheriff of Pulaski County. It is clear from the testimony, including Mr. Robinson's, that during this period of time there were strained relations between Mr. Robinson and then County Judge William Beaumont, and between Mr. Robinson and several members of the quorum court. During this time, many members of the Pulaski County Sheriff's Department, including several of the appellees herein, also formed a union and attempted to be recognized by the sheriff and the Pulaski County Quorum Court.

After numerous preliminary hearings, a trial on the merits with respect to the issue of overtime pay commenced on May 31, 1984, and after hearing extensive testimony over a period of several months, the trial court issued its order dated August 13, 1985, finding the appellant, Pulaski County, liable to the appellees for all hours worked in excess of 40 hours per week beginning September 10, 1981, and ending March 9, 1982.

The appellees then moved for reconsideration of the rate of compensation for overtime hours, and following additional hearing the trial court, by its order of April 15, 1986, ordered that the overtime hours during the period of liability be compensated at one and one-half times the regular rate of pay. A total judgment in the amount of $61,433.32 was entered against appellants.

The appellees had attempted to recover from the county on several theories. They claimed that they were entitled to be certified as a class. They claimed that they were entitled to be paid overtime for all hours worked in excess of 40 hours per week for a

period beginning prior to 1981. They claimed that they were entitled to recover under the terms of a collective bargaining agreement between the sheriff and the appellees. They claimed that they were entitled to overtime pay since it was promised by the sheriff and claimed that the quorum court had delegated authority to the sheriff to bind the county. They claimed that they should recover under theory of restitution. They claimed that they were entitled to rights under the statutory law concerning overtime pay. Finally, they claimed that they performed necessary services to the county and should be paid, notwithstanding the fact that the quorum court failed to appropriate funds for overtime pay. The trial court agreed only with the last theory of recovery. While the appellees raised several of these theories in their notice of cross-appeal, their brief was limited to the argument that the trial court did not err in finding that appellants were liable for overtime compensation to appellees. Accordingly, we will consider that argument first.

*I. The trial court erred in finding that appellants were liable for overtime compensation to appellees, because appellees are salaried employees and no legal authority exists for overtime compensation.*

There is no federal or state authority which would have required the appellants to have paid overtime compensation to salaried employees.

First, the Federal Fair Labor Standards Act of 1938, as codified in 29 U.S.C. Section 201, et seq., originally provided overtime compensation for specific employees engaged in interstate commerce activities. In 1974, Congress amended the act by extending the overtime requirement to public agency law enforcement and fire protection employees. However, in *National League of Cities* v. *Usery*, 426 U.S. 33, the United States Supreme Court struck down that portion of the Act which pertained to employees performing traditional governmental functions, including law enforcement. The Supreme Court reasoned that this inclusion interfered with the State Sovereign Power to establish wage and overtime controls on its employees or those of its political subdivisions.[1]

---

[1] While *Usery* was subsequently overruled in *Garcia v. San Antonio Metro Transit Authority*, 469 U.S. 528, *Usery* was the controlling law during the time period in question. Accordingly, appellees are unable to retroactively apply *Garcia* and rely on provisions of the Federal Fair Labor Standards Act.

■ The Arkansas Statutory Law concerning overtime pay reveals a similar exclusion for governmental employees. The "Minimum Wage Act of the State of Arkansas," now codified as Ark. Code Ann. Section 11-4-201, et seq., provides for overtime compensation for particular employees who work in excess of forty (40) hours per week. However, Ark. Code Ann. Section 11-4-203(7)(C), in defining "covered employees," specifically exempts those employed "by the state or any political subdivision thereof, except public schools and school districts."

*II. The trial court erred in finding that appellants are liable for monetary overtime compensation to appellees, because no legislative appropriation of funds have been enacted.*

The appellants next contend that there was no liability for overtime compensation for appellees because there was no legislative appropriation funds. We find this argument meritorious.

The authority to establish both the number and compensation of all county employees, including deputy sheriffs, is clearly vested in the quorum court of each county pursuant to Amendment 55 to the Arkansas Constitution. *Beaumont* v. *Atkinson*, 267 Ark. 511, 593 S.W.2d 11 (1980). The enabling legislation for Amendment 55 was Act 742 of 1977, now codified as Ark. Code Ann. Sec. 14-14-101, et seq. In regard to the quorum court's specific legislative authority, Ark. Code Ann. § 14-14-801 provides:

> (a) As provided by Arkansas Constitution, Amendment 55, Section 1, Part (a), a county government, acting through its quorum court, may exercise local legislative authority not expressly prohibited by the Arkansas Constitution or by law for affairs of the county.
>
> (b) These powers include, but are not limited to, the power to: . . . (2) appropriate public funds for the expenses of the county in a manner prescribed by ordinance; . . . (6) fix the number and compensation of deputies and county employees.

■ While it is clear that a county sheriff has the authority to appoint his deputies, it is equally clear that the compensation for these individuals is within the exclusive jurisdiction of the quorum court. The record discloses that a clear majority of the

individual appellees who testified at trial admitted their knowledge of county legislative proceedings and the requirement of an appropriation by the quorum court as a condition to their employment and pay.

The record also clearly reflects that the annual budgets as adopted by the Pulaski County Quorum Court in the two fiscal years encompassed by the trial court's orders, i.e., the last part of 1981 and the first part of 1982, appropriated only *annual* salaries for appellees' compensation and no appropriation was made for overtime pay.

The trial court found, however, that between September 10, 1981, and March 9, 1982, that a period of overtime for "necessary" services obligated the county to pay hourly pay for all hours worked over 40 hours per week even absent a valid appropriation for overtime pay. The court found that the additional services were required as a result of the litigation in Federal District Court, *Billy Hill, et al.* v. *Pulaski County, et al.*, E.D. Ark. No. LR-C-79-465.

The court found that such necessary services are mandated by Ark. Code Ann. Sec. 14-14-802, which provides:

> (a) A county government, acting through the county quorum court, shall provide, through ordinance, for the following necessary services for its citizens:
>
> (1) The administration of justice through the several courts of record of the county;
>
> (2) Law enforcement protection services and the custody of persons accused or convicted of crimes; . . .

In making its ruling, the trial court relied upon this court's holding in *Union County* v. *Union County Election Commission*, 274 Ark. 286, 623 S.W.2d 827 (1981). In Union County, the election commission had requested an appropriation of $7,500.00 to prepare appropriate ballot forms and to set up an election machine. The quorum court, in response to this request, appropriated only $3,500.00 of the requested $7,500.00. The election commission later submitted a claim in the amount of $7,500.00, but the Union County Judge refused to honor the election commission's claims since the claim exceeded the existing appropriation. The lower court directed the county judge to pay the

election commission's total claim despite the lack of a legislative appropriation.

■ However, in reversing the trial court's decision, this court held:

> The amount allowed for voting machine preparation is not fixed by state law and there is nothing in Amendment 55, the revision of county government amendment, and nothing in Ark. Stat. Ann. Sec. 17-3101 through 17-4208 (Repl. 1980 and Supp. 1981), the County Government Code, to prohibit or to curtail the power of the quorum court from exercising its discretion on the amount to be allowed, so long as it is reasonable.

> The trial court ruled that the commission's action was not without reasonable basis in setting the amount at $7,500.00. That is an erroneous application of the law because such a standard means that an agency of county government which is obligated by law to perform a specified function has the discretion to determine the amount of money to be spent, rather than the quorum court. We hold that an agency of county government which performs a function imposed by law must live within its appropriation unless that appropriation is unreasonable. Appropriations made by the quorum court are presumed to be reasonable and the burden rests on the entity filing the claim in excess of an appropriation to prove unreasonableness.

Did the appellees meet their burden of proving that the appropriations in the 1981 and 1982 budgets for the operation of the sheriff's office were unreasonable? We think not.

First, there was no finding by the trial court that the individual appropriated salaries were unreasonable. Even though the sheriff's testimony indicated his bitterness toward the quorum court for cutting $300,000.00 from what he had thought his department's budget was going to be for 1981, the record also reflects that the county was experiencing a revenue shortfall and also faced a cut back in federal revenue sharing funds. The initial budget for the sheriff's department for 1981 totaled $3,400,000.00, of which sum $2,587,000.00 was appropriated for

salaries for sheriff's department employees. The record also reflects that the budget ordinance was later amended to add an additional $600,000.00 appropriation for the sheriff's department for 1981, even though this resulted in the transfer of funds from other departments. The uncontradicted testimony of Mr. Lawrence L. Goddard, a member of the Pulaski County Quorum Court, indicates that the appropriations for the sheriff's department totaled one-third of the entire Pulaski County budget.

The trial court attempted to support its findings concerning the necessity of the overtime pay on the order entered in the Federal District Court on December 4, 1981, which required that 45% of the officers in the sheriff's department staff the Pulaski County Jail. While we are sympathetic with the dilemma placed on the sheriff's office as a result of the Federal Court order, we also find that the manner in which the Pulaski County Quorum Court reacted to the terms of the order was reasonable. As previously mentioned, before the end of fiscal year 1981, an additional $600,000.00 was added to the sheriff's department appropriation. Second, the Federal Court litigation concerning the Pulaski County Jail had been pending for ten years, and there is no way that the quorum court could have reasonably known at the time of the adoption of its 1981 budget that such an order as the one entered December 4, 1981, would be forthcoming within that fiscal year. Finally, in the adoption of its 1982 budget, the quorum court funded all the positions required by the Federal Court order.

A review of the Pulaski County ordinances affecting the county's personnel policy is appropriate. At the time the controversy first arose, Pulaski County Ordinance 255, enacted August 28, 1979, provided that the quorum court shall establish the number and compensation of county employees. The ordinance further provided that the job title, classification, and annual pay rate shall be specified for each budget position of a department or office in the annual budget. This ordinance contained no language concerning definition of the work week.

The second ordinance addressing the "work week definition" was Pulaski County Ordinance 82-OR-19, dated June 22, 1982, which amended Ordinance 255. According to testimony by quorum court member Wilandra Dean and Sheriff Tommy

Robinson, the ordinance was drafted to address the issue of the additional hours being worked by Pulaski County Sheriff's deputies. The ordinance provided definitions of "compensatory time," "scheduled overtime," and defined the term "work week" or "working week," or "regular work week," or "normal work week" as meaning 40 hours of work by a county employee during any seven consecutive calendar days.

However, the ordinance further gave the exclusive authority to the quorum court to prescribe the maximum overtime wage appropriation to each agency, to set the maximum rate or rates of overtime pay, and to set the hourly rates for overtime. Any of these provisions would have had to have been prescribed by ordinance.

█ This ordinance made the existence of a specific and valid appropriation a condition precedent to overtime pay. Since the Pulaski County Quorum Court never appropriated funds to the sheriff's department for the payment of the overtime wages at issue, the trial court erred in awarding a monetary judgment to the individual deputies as no legal authority existed to support such a finding.

Further, it must be noted that the provisions of Ordinance 82-OR-19 did not become effective until 30 days after its passage on June 22, 1982, which was several weeks after the end of the period during which the overtime services were "necessary."

The issue of entitlement of governmental employees to compensation absent an appropriation by the appropriate legislative body was recently addressed by this court in *City of Greenbriar* v. *Cotton*, 292 Ark. 264, 737 S.W.2d 444 (1987). In that case, the duly elected city marshal of Greenbriar lawfully appointed a deputy to serve as deputy city marshal, but the city council failed to appropriate funds for either salary or expense allowance. The evidence showed that the deputy bought uniforms, worked as many as 60 hours per week, expended funds for the use of his automobile and otherwise performed the official functions of the position. This court found that while a city marshal was empowered to appoint a deputy, the exclusive responsibility of determining whether a salary would be paid was vested in the legislative body, in that case, the city council. Absent an appropriation, no right to compensation in the form of salary

or overtime pay accrued.

Here, no one has questioned the authority of the sheriff to appoint his deputies, or to the deputies' entitlement to an annual salary as appropriated by the quorum court. However, to the extent that additional overtime pay has been ordered by the trial court, such action is contrary to law.

*III. The trial court erred in finding that appellants are liable for monetary overtime compensation based upon payment at one and one-half times appellees' rate of pay.*

On motion for rehearing, the appellees successfully convinced the trial court to modify its original ruling allowing compensation for hours worked over 40 hours per week at their regular rate of pay to award pay at time and one-half. We reverse this ruling.

In making its ruling, the court noted a memorandum dated September 10, 1981, which was a letter from Major Zoeller in the sheriff's department to other deputies which stated:

> Major Bowman, per our conversation and agreement, the patrol division will staff the correctional facility for all three shifts for those positions which are open Monday, Tuesday and Wednesday. For this involuntary overtime, employees will be paid time and one-half pay.
>
> Thursday and Friday will be staffed by the corrections facility and process will cover Saturday and Sunday.

In modifying its order, the court found that this policy was "codified in 82-OR-19 by implication." We find no authority which will allow an independent inter-governmental memo to be codified by implication. Further, as previously discussed, the provisions of 82-OR-19 did not become effective until July 22, 1982, were not retroactive, and were clearly not applicable to hours worked between September, 1981, and March, 1982.

Also, the trial court's reliance upon representations made by one employee of the sheriff's department to other employees of the sheriff's department is contrary to this court's holding in *City of Greenbriar* v. *Cotton, supra*. This court has consistently held that in order for a public officer to bind the political subdivision to a contractual obligation, the acts of such

official must have been made within his actual authority. *Hankins* v. *City of Pine Bluff*, 217 Ark. 226, 229 S.W.2d 231 (1950). Where, as here, a public officer's actions exceed his authority, his acts are null and void. *Woodward* v. *Campbell*, 39 Ark. 580 (1882). *See also Venhaus* v. *Hale*, 281 Ark. 390, 663 S.W.2d 930 (1983).

Reversed and dismissed.

HOLT, C.J., and PURTLE J., not participating.

BOYCE, WAYNE, Special Justice, joins in this opinion.