The Honorable Jay Bradford State Representative Post Office Box 8367 Pine Bluff, AR 71611-8367
Dear Representative Bradford:
I am writing in response to your request for my opinion regarding a question prompted by the following legal risk facing local governments:
 There have been numerous Section 1983 lawsuits filed against criminal justice professionals on the basis that an incident involved misconduct. A further assertion is that the misconduct was motivated by the agency adopting a policy or custom of inadequate training or supervision of the officers under its control.
 The United States Supreme Court has ruled that a local government could be held liable under 42 U.S.C. 1983 if an officer injures a person due to a deficiency in training. Inadequate training may serve as a basis for liability where the failure to train amounts to deliberate indifference to the rights of persons with whom they come into contact.
 The court recognized that some officers, in light of their assigned duties, show the need for more or different training and that [if] this need is obvious, and the inadequacy so likely to result in the violation of constitutional rights, that county policy makers can reasonably be said to have been deliberately indifferent to this need.
In light of these concerns, you have posed the following question:
 Is the hiring of a training officer and specifically paying for him to obtain a master's degree an expense that a county government can legally fund?
RESPONSE
I am unable to answer this question without knowing all of the attendant circumstances, including the special nature of the "assigned duties" you suggest that trainees would eventually perform. However, I will note that courts generally accord strong deference to a quorum court's determinations regarding what appropriations are necessary to fund county government operations, including law enforcement. In my opinion, a reviewing court would uphold the appropriation unless it determined that the quorum court acted arbitrarily, unreasonably or capriciously in pursuit of an end that did not primarily serve a public purpose. However, with respect to your suggestion that the purpose of hiring the training officer would be to avoid county liability under 42 U.S.C. § 1983,[1] I will further note that the standard for imposing liability on a county for inadequate training of police officers is daunting — a fact that I believe might factor into the determination of whether it is justified to expend public funds to provide a graduate education for a police training officer.
The Supreme Court case you reference in your request is Canton v.Harris, 489 U.S. 378 (1989), which addressed whether a municipality might, under certain circumstances, be held liable under 42 U.S.C. § 1983
for violations of federal law resulting from its failure adequately to train its employees. Although the Court answered this question in the affirmative, it made clear that only under extremely narrow circumstances will liability attach to a political subdivision for a law enforcement officer's violation of any individual's rights under federal law.
The Court expressly held in Canton "that the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." Id. at 388. The Court offered the following explanation in addressing what might constitute "deliberate indifference" of the sort that might trigger liability:
 Monell's[2] rule that a city is not liable under § 1983 unless a municipal policy causes a constitutional deprivation will not be satisfied by merely alleging that the existing training program for a class of employees, such as police officers, represents a policy for which the city is responsible. That much may be true. The issue in a case like this one, however, is whether that training program is adequate; and if it is not, the question becomes whether such inadequate training can justifiably be said to represent "city policy." It may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable steps to train its employees. But it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.
In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.
 In resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform.
Id. at 389-90 (emphasis added; footnotes omitted).
With respect to the issue of causation, the Court observed:
 In Monell v. New York City Dept. of Social Services, 436 U.S. 658
(1978), we decided that a municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue. Respondeat superior or vicarious liability will not attach under § 1983. Id., at 694-695." It is only when the `execution of the government's policy or custom . . . inflicts the injury' that the municipality may be held liable under § 1983." Springfield v. Kibbe, 480 U.S. 257, 267 (1987) (O'CONNOR, J., dissenting) (quoting Monell, supra, at 694).
 Thus, our first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.
Id. at 378. The Court further observed that "for liability to attach . . . the identified deficiency in a city's training program must be closely related to the ultimate injury." Id. at 391. In a concurrence joined by two other justices, Justice O'Connor explained this strong causality requirement as follows:
 [A]bsent a requirement that the lack of training at issue bear a very close causal connection to the violation of constitutional rights, the failure to train theory of municipal liability could impose "prophylactic" duties on municipal governments only remotely connected to underlying constitutional requirements themselves.
Id. at 395 (O'Connor, J., concurring).
The Court explained its adoption of this narrow standard of liability as follows:
 To adopt lesser standards of fault and causation would open municipalities to unprecedented liability under § 1983. In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city "could have done" to prevent the unfortunate incident. See Oklahoma City v. Tuttle, 471 U.S., at 823 (opinion of REHNQUIST, J.). Thus, permitting cases against cities for their "failure to train" employees to go forward under § 1983 on a lesser standard of fault would result in de facto respondeat superior
liability on municipalities — a result we rejected in Monell, 436 U.S., at 693-694. It would also engage the federal courts in an endless exercise of second-guessing municipal employee-training programs. This is an exercise we believe the federal courts are ill suited to undertake, as well as one that would implicate serious questions of federalism. Cf. Rizzo v. Goode, 423 U.S. 362, 378-380 (1976).
Id. at 391-92.
In my opinion, a court acquainted with all of the facts might well determine that the graduate education the county is contemplating providing a training officer is precisely the sort of "prophylactic" measure that Justice O'Connor suggested is not required under the standard set forth in Canton. However, notwithstanding your suggestion that the county is considering hiring and educating a training officer for the express purpose of avoiding exposure to liability under theCanton standard, your question as stated is broader — namely, whether the county, for whatever reasons it might have, could "legally fund" the hiring and graduate education of a training officer.
As a general proposition, quorum courts enjoy considerable latitude in crafting local laws. Amendment 55, § 1(a) of the Arkansas Constitution provides that "[a] county acting through its Quorum Court may exercise local legislative authority not denied by the Constitution or by law." Amendment 55, § 4 further provides: "In addition to other powers conferred by the Constitution and by law, the Quorum Court shall have the power to . . . adopt ordinances necessary for the government of the county." Section 69 of Act 742 of 1977, codified at A.C.A. § 14-14-801
(Repl. 1998), further affords the quorum court local legislative authority to "[p]rovide for any service or performance of any function relating to county affairs," and to "[e]xercise other powers, not inconsistent with law, necessary for effective administration of authorized services and functions." A.C.A. § 14-14-801(b)(10) (13).See also generally Walker v. Washington Co., 263 Ark. 317, 564 S.W.2d 513
(1978). In addition, A.C.A. § 14-14-802 (Repl. 1998) provides in pertinent part:
 (a) A county government, acting through the county quorum court, shall provide, through ordinance, for the following necessary services for its citizens:
* * *
(2) Law enforcement protection services. . . .
In my opinion, a reviewing court faced with a case alleging that hiring the training officer and funding his graduate education amounted to an illegal exaction would be strongly inclined to defer to the quorum court's judgment regarding how to fulfill its obligation to fulfill the law enforcement needs of the county. As the Arkansas Supreme Court noted in Turner v. Woodruff, 286 Ark. 66, 72-73, 689 S.W.2d 527 (1985):
 Although ultimately the propriety of a proposal's stated purpose is resolved by the judiciary, great weight must be given legislative determinations of public purposes. See Kerr v. East Central Ark. Regional Housing Auth., 208 Ark. 625, 630, 187 S.W.2d 189 (1945); 64 C.J.S. Municipal Corporations 1905, p. 479 (1950); see also Brodhead v. City County of Denver, 126 Colo. 119, 247 P.2d 140 (1952).
Moreover, we said in Murphy, supra, that:
 [T]he determination of whether legislation fulfills a public purpose is a legislative decision and a court will reverse that decision only if the legislature acted arbitrarily, unreasonably or capriciously. The court should not substitute its own judgment for that of the legislature.
Furthermore, we have said:
 It is only in those cases where the discrepancy between an expressed objective and actuality is so great that no reasonable person would believe that the purported purpose was a necessary expense of government that the courts will intervene.
Humphrey, State Auditor v. Garrett, 218 Ark. 418, 236 S.W.2d 569 (1951) [emphasis in original].
As noted in the passage just quoted, a reviewing court's inquiry would focus on whether the quorum court's actions fulfilled a "public purpose," and the court would not second-guess the quorum court unless it acted "arbitrarily, unreasonably or capriciously." In this regard, I should note that the mere fact that a public expenditure results in a private benefit is not necessarily constitutionally offensive. See Ark. Op. Att'y Gen. No. 2004-319 (stating that "[a]n authorized use for a public purpose is not, however, invalid even though it involves an incidental private benefit") (quoting Ark. Op. Att'y Gen. No. 93-343 and citing 64 C.J.S.Municipal Corporations § 1725 (1950)); accord Ark. Op. Att'y Gen. No.95-038. As the court noted in Venhaus v. Adams, 295 Ark. 606, 612,752 S.W.2d 20 (1988): "`Appropriations made by the quorum court are presumed to be reasonable. . . .'" (Quoting Union County v. Union County ElectionCommission, 274 Ark. 286, 291, 623 S.W.2d 827 (1981). Accord Ark. Op. Att'y Gen. No. 2001-012.
I am neither authorized nor equipped to opine that the facts in this particular case would lead a reviewing court to any particular result; I can only remark generally that a reviewing court would in all likelihood inquire into the factual question of whether the proposed expenditure to hire a training officer and to finance his graduate education would serve a public, as opposed to a private, purpose. The court might inquire,inter alia, into the following questions: what training the police instructor would receive in his master's degree program; how that training would bear on the instruction he would provide officers; what, if any, "need for more or different training," Canton, 489 U.S. at 391, exists with respect to the instructor's trainees that might warrant providing the instructor a free graduate education; what conditions would preclude an available public resource like a training academy from providing the instructor with additional training;[3] and what likelihood exists of retaining a training officer who already possesses the requisite educational credentials. For the moment, based upon a review of all the facts, counsel for the county can advise the quorum court whether the proposed expenditure could withstand constitutional challenge under the standard discussed above.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB: JD/cyh
[1] Title 42 U.S.C. § 1983 provides in pertinent part:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .
Although the issue in Canton was the potential liability of a city, the Court has applied the Canton standard to counties as well. See, e.g.,Davis v. Monroe County Board of Education, 526 U.S. 629, 642 (1999);Board of Commissioners of Bryan County v. Brown, 520 U.S. 397, 403.
[2] Monell v. New York City Dept. of Social Services, 436 U.S. 658
(1978).
[3] With respect to the question of potential exposure to liability under 42 U.S.C. § 1983, I will note that courts regularly consider a municipality's requiring its law enforcement officers to attend a police academy a strong indicium of compliance with the training requirements at issue in Canton. See, e.g., Andrews v. Fowler, 98 F.3d 1069, 1076-77 (8th Cir. 1996) (finding sufficient attendance at training academy and two weeks of on-the-job training); Smith v. Watkins, 159 F.3d 1137, 1138 (8th Cir. 1998); Abbott v. City of Crocker, 30 F.3d 994 (8th Cir. 1994); and Williams-El v. Johnson, 872 F.2d 224, 230 (8th Cir. 1989).