Marc McCune, Prosecuting Attorney Twenty-First Judicial District 206 South Third Street Van Buren, AR 72956
Dear Mr. McCune:
I am writing in response to your request for my opinion on the following question, which you have submitted on behalf of a member of the Crawford County Quorum Court:
 In light of Amendment 55 of the Arkansas Constitution of 1874, may a quorum court, on behalf of its county, purchase real property at a price more than fifty percent (50%) over the real property's fair market or appraised value?
You report having found no precedent on this issue.
RESPONSE
This question appears to be based upon a flawed assumption that the quorum court has the general authority to negotiate and to effect a purchase of real property on behalf of the county. Although I believe a quorum court could, if the circumstances warranted, direct a county judge to bid on a particular piece of property in pursuit of some public purpose, the county judge is charged with negotiating a price for the property up to the amount appropriated by the quorum court. See Ark. Const. amend. 55, § 3. It is the role of the quorum court to appropriate an amount that might be used to make the purchase, and it is the role of the county judge to negotiate the purchase for an amount that does not exceed the appropriation. With respect to the purchase price paid by the county, only a finder of fact acquainted with all the attendant circumstances could determine the appropriateness of a county's purchasing a particular parcel of real property at a price above fair-market or appraised value. Although a purchase above market value might be warranted under certain circumstances, I am not situated to determine whether it would be so in any particular instance.
The Arkansas Code contains no provision directing that the purchase price of real property obtained on behalf of a county bear any particular relationship to its fair-market or appraised value.[1] The question thus becomes whether any bright-line rule regarding this issue might be gleaned from the constitutional, statutory or case law defining the powers of the various county authorities. In my opinion, the answer to this question is "no," although the provisions of Ark. Const. arts. 12, § 5 and 16, § 13 generally prohibit the unwarranted expenditure of county funds.
The power to appropriate funds for a purchase of property on behalf of the county clearly resides in the quorum court. Subsection 1(a) of Amendment 55 to the Arkansas Constitution provides that "[a] county acting through its Quorum Court may exercise local legislative authority not denied by the Constitution or by law." In this regard, A.C.A. §14-20-106 provides as follows:
 No county court or agent of any county shall make any contract on behalf of the county unless an appropriation has been previously made therefor and is wholly or in part unexpended. In no event shall any county court or agent of any county make any contract in excess of any appropriation made, and the amount of the contract shall be limited to the amount of the appropriation made by the county quorum court.
Moreover, as one of my predecessors noted in Ark. Op. Att'y Gen. No.2001-305, the "fiscal authority to decide how much money can be spent . . . resides in the quorum court, in the absence of a state law fixing the amount allowed or some basis in either Amendment 55 or the County Government Code for curtailing this fiscal discretion in the court.Accord Union County v. Union Co. Election Comm'n, 274 Ark. 286,623 S.W.2d 827 (1981)." With respect to the price term of a contract, then, the quorum court's role is limited to determining the amount that the county judge might commit in negotiating the contract. With respect to the actual negotiation and execution of the purchase contract, as distinct from the authorization to act that an appropriation represents, Ark. Const. amend. 55, § 3 provides that the county judge, not the quorum court, will "authorize and approve disbursement of appropriated county funds." Accord A.C.A. § 14-14-1101 (Repl. 1998); see Smith and Buechleyv. Hempstead County, 180 Ark. 272, 275, 21 S.W.2d 178 (1929) ("[T]he Legislature did not vest in the quorum court the power to make contracts for the expenditure of money appropriated by it."). As I noted in Ark. Op. Att'y Gen. No. 2003-012:
 Because. . . . the county judge has been granted the authority and responsibility for entering into contracts on behalf of the county, see Ark. Const., Am. 55, § 3; A.C.A. § 14-14-1102, it would constitute a violation of the principle of separation of powers for the quorum court to dictate to the county judge the details of how this authority and responsibility is to be carried out. A.C.A. § 14-14-502. Although the quorum court's appropriation must be as specific as possible, see
A.C.A. § 14-20-103; Op. Att'y Gen. No. 2000-064, it is my opinion that for a quorum court to dictate the specific parties with whom a county judge may enter into contracts on behalf of the county would go beyond the scope of the quorum court's authority.
Regarding the size of the quorum court's appropriation referenced in your question, various factual issues render it impossible for me to opine whether expending the entire appropriation to purchase a particular parcel of property might be warranted. As an initial matter, it is unclear what might motivate a quorum court to appropriate for a particular land purchase an amount that exceeds by 50% the fair-market or appraised value of a particular piece of property. It may be that a particular public benefit otherwise unrealizable in a given situation would justify a quorum court in making an above market-value appropriation for the purchase of a particular piece of property, but only a finder of fact could determine whether this were so in any particular case.
Given the factual nature of the question, I can do no more than note generally that an expenditure pursuant to a quorum court's appropriation will withstand challenge so long as it is reasonable and serves a public purpose. As I observed in Ark. Op. Att'y Gen. No. 2005-102:
 [R]egarding the expenditure of public funds to make improvements to a private building leased to house a public library, I have said:
 The funds expended in this manner must be a reasonable amount. Cf. e.g. Op. Miss. Att'y Gen. 1999-0511 (stating that, "the city may lease property for a municipal purpose, such as a library, but the governing authorities may only spend funds on improvements which are commensurate with the value and term of the lease"). If the amount expended were unreasonable, even if the improvements were "necessary," then the excess expenditure might be challenged as an illegal exaction in violation of Ark. Const. art. 16, § 13.
 Op. Att'y Gen. 2004-319. The Arkansas Supreme Court has described the remedy under Article 16, § 13 of the Arkansas Constitution in the following manner:
 The illegal exaction provision and the cases interpreting it encompass two (2) different types or kinds of exactions. One type involves the prevention of a misapplication of public funds or the recovery of funds wrongly paid to a public official. We have given this type of exaction an expansive interpretation because taxpayers are the equitable owners of all funds collected by a government and, in most of the cases, are liable to replenish the funds exhausted by a misapplication or wrongful payment. Under these conditions taxpayers are entitled to broad relief. For convenience, we label this type of case a "public funds" exaction case.
 Pledger v. Featherlite Precast Corp., 308 Ark. 124, 128, 823 S.W.2d 852
(1992) (citations omitted); see also Hodges v. Lamora, 337 Ark. 470, 989 S.W.2d 530 (1999).
In my opinion, these principles would likewise apply in determining the propriety of expending an appropriation for the purchase of land on behalf of a county. Compare Venhaus, supra (declaring the obverse principle that a quorum court cannot underfund necessary services but must appropriate a "reasonable" amount therefor). As the court noted in Turner v. Woodruff,268 Ark. 66, 73, 689 S.W.2d 527 (1985):
 [A] reviewing court's inquiry would focus on whether the quorum court's actions fulfilled a "public purpose," and the court would not second-guess the quorum court unless it acted "arbitrarily, unreasonably or capriciously."
(Quoting Humphrey, State Auditor v. Garrett, 218 Ark. 418, 236 S.W.2d 569
(1951)).
As I further remarked in Ark. Op. Att'y Gen. No. 2005-062, in which I addressed whether a county might appropriate and expend funds to hire a law enforcement training officer and to finance his graduate education:
 As the court noted in Venhaus v. Adams, 295 Ark. 606, 612, 752 S.W.2d 20 (1988): "`Appropriations made by the quorum court are presumed to be reasonable. . . .'" (Quoting Union County v. Union County Election Commission, 274 Ark. 286, 291, 623 S.W.2d 827 (1981)). Accord Ark. Op. Att'y Gen. No. 2001-012.
 I am neither authorized nor equipped to opine that the facts in this particular case would lead a reviewing court to any particular result; I can only remark generally that a reviewing court would in all likelihood inquire into the factual question of whether the proposed expenditure to hire a training officer and to finance his graduate education would serve a public, as opposed to a private, purpose.
Within the context of the specific question as qualified by my remarks regarding the respective roles of the quorum court and the county judge, I believe a finder of fact would likewise inquire whether the above market-value purchase made in accordance with an above market-value appropriation was not arbitrary, unreasonable or capricious under the circumstances and whether it served a legitimate public purpose.
Finally, given that the county judge has the general authority to negotiate contracts on behalf of the county, a question might arise whether the quorum court could by ordinance dictate that the county judge bid a stated amount on a particular piece of property, as opposed to bidding up to the appropriated amount on any property he deems suitable to the purpose declared by the quorum court. Once a quorum court has made an appropriation, it normally cannot regulate an executive official's expenditure of the appropriated amount. See Ark. Ops. Att'y Gen. Nos.2001-305 (opining that a quorum court might appropriate funds for a software system but could not dictate which system the county collector should purchase); 2000-262 (opining that a quorum court could not mandate by ordinance that it approve a sheriff's expenditures of appropriated funds); and 89-206 ("[A]n effort to permit expenditures of appropriations only upon approval of the Quorum Court violates the separation of powers doctrine."). Nor can a quorum court use devices such as line-item appropriations as a means of controlling or dictating expenditures. Id.
However, it may be that under particular circumstances a court would decline to characterize as an encroachment on executive prerogatives a quorum court's directing a county judge to bid on a particular piece of property for some specified purpose such as, for instance, the establishment of a park. Real estate is in many instances unique in a way that other property such as the general category of software systems discussed in Opinion No. 2001-305 is not,[2] and in such instances it might fall within the range of legislative discretion for a quorum court to declare that only the purchase of a particular parcel of property would fulfill a legislatively determined public purpose. However, I believe the authority to negotiate the contract for the purchase of that property lies exclusively in the county judge, who might bid any price for the property he deems reasonable within the limits of the quorum court's appropriation.
In summary, without knowing the pertinent facts in the situation that apparently exists in Crawford County, I am unable to opine whether an appropriation and purchase of the sort described might fall within the scope of the quorum court's legislative or the county judge's executive authority. The county's counsel, after reviewing all of the circumstances, should be situated to advise on this matter.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB/JHD:cyh
[1] The detailed provisions regulating the sale of county real property by the county judge are set forth at A.C.A. §§ 14-16-105 (Supp. 2003), as amended by Acts 2005, No. 1240, and 14-16-106 (Repl. 1998), as amended by Acts 2005, No. 725, and 14-16-107 (Repl. 1998). These statutes provide, respectively, for the sale of real property for not less than three-fourths of appraised value or to the highest bidder in the case of "surplus" property. The detailed provisions regulating the purchase by the county of "commodities" — a term that does not include real property — are set forth in title 14, chapter 22, subchapter 1 of the Code (Repl. 1998 Supp. 2003).
[2] Indeed, because of the uniqueness of real property, the equitable remedy of specific performance is available to enforce the purchase or sale of a particular tract. See Bharodia v. Pledger, 340 Ark. 547,11 S.W.3d 540 (2000) (recognizing that the supreme court has allowed both the buyers and the sellers of land to seek specific performance on real-estate contracts); Hawkins v. Lamb, 210 Ark. 1, 194 S.W.2d 5 (1946) (recognizing that a buyer may sue for specific performance of a real-estate contract); Page v. Anderson, 85 Ark. App. 538, 157 S.W.3d 575
(2004) (same).